**Form No. 11-107**

**IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | **CASE NO: 25-36931** |
| JRCP Restaurants, LLC d/b/a Crust Pizza | § | |
| Gosling Pines | § | |
| | § | |
| Debtor | § | |
| | § | |
| | § | **CHAPTER 11** |
| | § | |

**ORDER
CONFIRMING DEBTOR(S)' PLAN OF REORGANIZATION
PURSUANT TO 11 U.S.C. § 1191(b)**

The Court held a hearing (the "*Confirmation Hearing*") to consider confirmation of the subchapter V plan of reorganization, ECF No. 50 (the "*Plan*") filed by JRCP Restaurants, LLC (the "*Debtor*"). Having considered the Plan, testimony, declarations, ballot summary, liquidation analysis and other evidence admitted at the Confirmation Hearing, the arguments of counsel and the applicable legal authorities, the Court hereby confirms the Plan and makes and issues the following findings of fact and conclusions of law (the "*Confirmation Order*").[1]

## I.   JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) this proceeding involves

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan. All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., unless otherwise indicated.

[2] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

Last Revised May 1, 2024

primarily core matters as it "concern[s] the administration of the estate and confirmation of a chapter 11 plan."[3] Furthermore, this Court may only hear a case in which venue is proper. Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor(s) main chapter 11 case is presently pending in this Court and therefore, venue of this proceeding is proper. The pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[4]

### II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This order supplements those findings and conclusions.  If there is an inconsistency, this Order controls.

On November 18, 2025 (the "*Petition Date*"), the Debtor(s) commenced this bankruptcy case (the "*Case*") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor has continued as a Debtor in possession pursuant to 11 U.S.C. §§ 1108 and 1184

On November 21, 2025, the Office of the United States Trustee filed a Notice of Appointment of Subchapter V Trustee, ECF No. 9, appointing Thomas A. Howley as the subchapter V trustee (the "*Subchapter V Trustee*") pursuant to 11 U.S.C. § 1183(a).

---

[3] 11 U.S.C. § 157(b)(2).
[4] Stern v. Marshall, 564 U.S. 462 (2011).

**Form No. 11-107**

As of the petition date, the Debtor was and continues to be eligible for relief under 11 U.S.C. § 109 and subchapter V of the Bankruptcy Code, and the Debtor is the proper proponent of the Plan under 11 U.S.C. § 1189.

The Debtor complied with 11 U.S.C. §1189(b).  The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

The solicitation of the Plan complied with the Bankruptcy Code and Bankruptcy Rules, was appropriate and satisfactory based upon the circumstances of the Case, was conducted in good faith, and was in compliance with 11 U.S.C. §§ 1125, 1126, and all other applicable sections of the Bankruptcy Code and Bankruptcy Rules.

All parties required to be given notice of the bankruptcy, all deadlines in the Case, the Plan, and the Confirmation Hearing have been provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtor's business operations; a liquidation analysis; projections with respect to the Debtor's ability to make the payments under the Plan; and the submission of all or a portion of the subchapter V debtor's post-petition income from future earnings to the supervision and control of the trustee as is necessary for the execution of the plan.

The Debtor, as proponent of the Plan, has meet its burden of proving the applicable elements of 11 U.S.C. §§1191(b) by a preponderance of the evidence.

Accordingly, it is therefore

**ORDERED:** that

1.      The Plan of Reorganization filed by the Debtor on February 17, 2026 (ECF No. 50) and attached hereto as **Exhibit A**, is hereby CONFIRMED and approved in each and every respect as a non-consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below (the "*Plan*"). Debtor must contribute 60 months of Projected Disposable Income over the life of the Plan (the "*Plan Period*").  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date.  The terms of the Plan and the Debtor'(s) or Reorganized Debtor'(s) entry into any related documents and performance thereunder, including, without limitation, all documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtor(s) and reorganized Debtor(s) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

2.      Subject to paragraph 7 below, to the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

3.      Pursuant to 11 U.S.C. § 1183(c)(2), not later than fourteen (14) days after Debtor's plan is substantially consummated, Debtor must file with the court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

4.      In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.      Within three (3) calendar days after entry of this order, the Debtor must serve notice of entry of this Confirmation Order ("*Notice*"), pursuant to Bankruptcy Rule 3020(c). The Notice

**Last Revised May 1, 2024**

must be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor must thereafter promptly file a copy of such Notice with proof of mailing with the Clerk of Court.

6. The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on the Debtor(s); all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

7. The following Nonmaterial Plan Modifications are hereby approved:

   a. The claims that make up Classes 2-1 through 2-5 are for ad valorem taxes. These claims will be paid in full on the Effective Date with statutory interest of 12% accruing as of February 1, 2026, until such taxes are paid.

   b. Notwithstanding anything in the Plan to the contrary and for the avoidance of any doubt, any secured creditor shall retain its rights in and to its secured collateral and its right to enforce its remedies under state law against the collateral in the event of default under the Plan.

   c. Gulf Coast Bank shall have an allowed claim in the amount of $669,512.97.

8. The Debtor must make the payments required by the Plan under 11 U.S.C. § 1194(b) to the Subchapter V Trustee ("*Disbursing Agent*") on or before the 15th of each month (the "*Deadline*"). After receipt of the plan payments, the Disbursing Agent must distribute plan payments in accordance with the terms of this Order and the Plan before the 25th of each until all

**Last Revised May 1, 2024**

required payments have been made. If the Debtor fails to make all required plan payments by the Deadline, the Disbursing Agent must provide notice to Debtor and Debtor's counsel and request payment within seven (7) calendar days of the notice. If Debtor fails to make the required plan payment to the Disbursing Agent within seven (7) calendar days of the notice, the Disbursing Agent must file a notice of default with the Clerk of Court.

9.      The Subchapter V Trustee, or other designated disbursing agent, must file, a preliminary report at the conclusion of the six (6) months from entry of the confirmation order and then for the duration of the period in which the Debtor must tender projected disposable income or equivalent values of property under the confirmed plan as required under § 1191(c)(2) (the "Non-Consensual Commitment Period"), a status report on each anniversary date of the entry of the confirmation order which outlines the status of payments made by the Debtor and distributed by the Subchapter V Trustee or other designated disbursing agent, in the past year and any other post-confirmation action taken toward consummation of the plan and serve that report upon the master mailing list (matrix) as constituted by the Court on the date of service.

10.     Within fourteen (14) calendar days of entry of this Confirmation Order, the Debtor must provide the Disbursing Agent with a list of allowed claims, associated account numbers, the amount of such claims, and the correct mailing address for the Disbursing Agent to send plan payments. If there are any disputed claims, the Debtor must provide a separate list of such disputed claims and an estimated date of resolution. The Debtor must file a certificate of service with the Clerk of Court indicating that the claim information required by this paragraph has been timely served on the Disbursing Agent.

11.     Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may file with the Bankruptcy

Last Revised May 1, 2024

Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("*Disputed or Undetermined Claim*"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date. At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Clai

12.     Except as otherwise provided in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Disbursing Agent must hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Disbursing Agent must distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Disbursing Agent must make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

13.     Disbursements may be delivered by the Disbursing Agent to (i) the address list provided by the Debtor under paragraph 9; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written

**Last Revised May 1, 2024**

notices of change of address delivered to the Disbursing Agent. If any distribution to a claimant of an allowed unsecured claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such claimant unless and until the Disbursing Agent is notified in writing of such claimant's correct mailing address, at which time all currently due distributions must be made to such claimant as soon as practicable. Undeliverable distributions must remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable and must not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Disbursing Agent must deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

14.     The Subchapter V Trustee must file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program.

15.     At the conclusion of the Plan Period and upon completion of Plan payments during such time, the Subchapter V Trustee or other disbursing agent as set forth in the confirmed plan or confirmation order must file, with the Clerk of Court, a notice of completion of plan payments which documents that all payments of projected disposable income or equivalent values of property by the Debtor under the confirmed plan as required under § 1191(c)(2) have been completed and that all other prerequisites for the entry of an order of discharge pursuant to 11 U.S.C. § 1192 have been fulfilled ("*Notice of Plan Completion*").

16.     Within thirty (30) calendar days of the filing of the Notice of Plan Completion, the Debtor must file a motion for entry of discharge and a motion for final decree.

**Last Revised May 1, 2024**

17.     Debtor must request a hearing date on all final motions including a motion for final decree.

18.     The Subchapter V Trustee must be compensated for their post-confirmation duties at their approved hourly rate and paid from the quarterly Disposable Income.  If the Disposable Income is insufficient to pay such fees, then the Reorganized Debtor may pay them directly as a requirement for the continuation of services as the Disbursing Agent.  The Reorganized Debtor is authorized to deduct form the Projected Disposable Income any amounts advanced by the Reorganized Debtor to pay the Subchapter V Trustee's fees and expenses. The amount of Disposable Income distributed or reserved to creditors will be net of the Disposable Income remitted by the Debtor to the Subchapter V Trustee. The Subchapter V Trustee's fees and expenses shall be disclosed in the quarterly report filed with the Court. All parties in interest will have 21 days after the quarterly report is filed to object to the Subchapter V Trustee's fees and expenses disclosed therein. If no objection is received, the Subchapter V Trustee may disburse his fees and expenses from the Disposable Income without further order of the Court.

19.     The Subchapter V Trustee must file a post-confirmation final fee application within fourteen (14) calendar days of the motion for final decree under Fed. R. Bankr. P. 3022, which shall include all compensation received and disclosed in the quarterly reports filed with the Court. All post-confirmation fees paid to the Subchapter V Trustee are subject to refund until approved by a final, non-appealable order.

20.     The Subchapter V Trustee shall have no responsibility to initiate disbursements until the Debtor has provided an initial payment of $1,000 in order to fund the setup of the bank account to handle disbursements.  The initial payment is necessary to cover the ordering of checks and to provide a buffer for any other expenses.

**Last Revised May 1, 2024**

21.     Upon completion of the Plan, the Subchapter V Trustee must file with the Clerk of Court a Report of No Distribution (NDR) or Final Report (TFR).

22.     After the filing of the Subchapter V Trustee's final report and resolution of any objection thereto, the Subchapter V Trustee will be discharged, the Subchapter V Trustee's bond will be cancelled, and the case will be closed.

23.     All of the Debtor'(s) assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor(s) pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order. If this case is later converted to a case under chapter 7 of the Bankruptcy Code, all assets of the debtor shall revest in the chapter 7 estate and be subject to administration by a chapter 7 trustee.

24.     The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

25.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute

**Last Revised May 1, 2024**

and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

26.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

27.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

28.     As soon as practicable after completion by the Debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or (2) of the kind specified in 11 U.S.C. § 523(a).

**Last Revised May 1, 2024**

29. The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

30. The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

31. Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

32. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in the Plan, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.

33. This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

**Signed: Thursday, April 2, 2026**

_____

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | §<br>§ | |
| | § | |
| **JRCP RESTAURANTS, LLC D/B/A** | § | **CASE NO. 25-36931** |
| **CRUST PIZZA GOSLING PINES** | § | **SUBCHAPTER V** |
| **DEBTOR.** | §<br>§ | |
| | § | |

**PLAN OF REORGANIZATION
UNDER SUBCHAPTER V**

JRCP Restaurants, LLC d/b/a Crust Pizza Gosling Pines ("JRCP" or the "Debtor"), debtor-in-possession of the above captioned matter, propose this *Plan of Reorganization under Subchapter V*.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Definitions | 1 |
| II. | Debtor Background/Financial Information | 3 |
| III. | Summary of Plan | 5 |
| IV. | Treatment of Administrative Expense Claims and Priority Tax Claims | 6 |
| V. | Classification and Treatment of Claims and Interests | 8 |
| VI. | Allowance and Disallowance of Claims | 10 |
| VII. | Treatment of Executory Contracts and Unexpired Leases | 11 |
| VIII. | Means for Implementation of the Plan | 11 |
| IX. | Effect of Confirmation and Releases | 12 |
| X. | Discharge | 12 |
| XI. | Reservation of Rights | 13 |
| XII. | Default | 13 |
| XIII. | General Provisions | 13 |
| XIV. | Notices | 16 |

## I.    DEFINITIONS

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings, respectively:

1.    "Administrative Expense Claim" shall mean a Claim that is allowed pursuant to Section 503 of the Bankruptcy Code.

1

2.  "Allowed Claim" shall mean, any Claim (a) that has been listed by the Debtors in their Schedules D or Schedules E/F as liquidated in amount and not "disputed" or "contingent" and that has not been supplanted by a proof of claim filed by the scheduled Creditor in the Chapter 11 Case, (b) that is established by a timely filed proof of claim in the Chapter 11 Case to which no objection or request for estimation has been filed on or before the Effective Date, or (c) that has been allowed by a final order of the Court.

3.  "Allowed _____ Claim" shall mean an Allowed Claim of the type described.

4.  "Bankruptcy Code" or the "Code" shall mean Title 11 of the United States Code.

5.  "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

6.  "Chapter 11 Case" shall mean the above captioned case proceeding under Chapter 11 of the Bankruptcy Code, which was commenced by the Debtors in the Court.

7.  "Claim" shall mean any claim (as that term is defined in 11 U.S.C. § 101(5)) against the Debtors.

8.  "Claims Bar Date" shall mean the deadline for filing Claims against the Debtors in the Chapter 11 Case, which was January 12, 2026, for non-governmental claimants, and is May 17, 2026, for governmental claimants.

9.  "Class" shall mean any class into which Claims are classified in this Plan.

10.  "Confirmation" shall mean the Court's entry of an order confirming the Plan.

11.  "Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, presiding over the Chapter 11 Case.

12.  "Creditor" shall have the same meaning as its given by 11 U.S.C. § 101(10).

13.  "Debtor" shall mean JRCP Restaurants, LLC d/b/a Crust Pizza Gosling Pines.

14.  "Disputed Claim" shall mean a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent or unliquidated; or (b) as to which (i) a Proof of Claim has been filed, (ii) an objection, or request for estimation, has been timely filed (and not withdrawn) by the Debtors or any other party-in-interest, and (iii) no final order has been entered thereon.

15.  "Effective Date" shall mean the first day of the month following twenty days from the date of Confirmation.

16.  "Petition Date" shall mean November 18, 2025, the date Debtor filed voluntary petition for relief under Chapter 11 of the Bankruptcy Code and made a Subchapter V election.

17.  "Plan" shall mean this *Plan of Reorganization Under Subchapter V* in its present

2

form, or as it may be amended, altered, varied, or modified from time to time.

18. "Priority Claim" shall mean a Claim entitled to priority under 11 U.S.C. § 507(a)(3)-(8).

19. "Reorganized Debtor" shall mean the Debtor, as reorganized pursuant to the Plan.

20. "IRS" shall mean the United States Internal Revenue Services.

21. "Secured Claim" shall mean the Claim of any Creditor secured by a lien or liens on property of a Debtor, which lien and/or liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Code or other applicable non-bankruptcy law, and are duly established in this case, to the extent of the value of the security, as determined in accordance with 11 U.S.C. § 506.

22. "Subchapter V Trustee" shall mean Thomas A. Howley, the appointed Subchapter V trustee in the Chapter 11 Case.

23. "Unsecured Claim" shall mean a claim that is not an Administrative Claim, a Priority Claim, or a Secured Claim.

## II.     DEBTOR BACKGROUND/FINANCIAL INFORMATION

### 2.1 History and Nature of Debtors' Business

JRCP was formed in 2020. Since its founding, the Debtor has operated a pizza restaurant in the Houston area, Crust Pizza Gosling Pines, through a franchise agreement with Crust Bros, LLC. JRCP is wholly owned by Justin and Nikki Bentley. Justin Bentley manages and oversees Crust Pizza Gosling Pines' day-to-day operational and financial affairs.

Debtor is a "small business debtor" as the term is defined under Section 101(51D) of the Bankruptcy Code.

### 2.2     Events Leading to the Chapter 11 Cases

In July 2021, JRCP obtained a loan from the Gulf Coast Bank (the "Gulf Coast"). This loan was scheduled in the amount of $566,354.72.

Subsequently, due to a slowdown in business and an increase in vendor pricing, revenue and margins decreased. To ensure its business could remain operational, JRCP obtained a second loan from Gulf Coast in January 2022. This loan was scheduled in the amount of $101,998.40.

Gulf Coast, through its UCC-1 filings, asserts a security interest in the Debtor's inventory, chattel paper, accounts, equipment, general intangibles, fixtures, furniture, and instruments. Amended Schedule A/B lists the total value of Gulf Coast's collateral at $73,697.34.

In September 2025, JRCP defaulted on its loans with Gulf Coast. Facing an imminent threat of a collection proceeding by Gulf Coast and defaulting on other obligations, such as rent, the Debtor concluded that seeking bankruptcy relief presented its best option to stabilize and reorganize its affairs.

Additionally, Debtor owes the state of Texas $295,374 in back sales taxes that it has collected from its customers, as well as $86,956.45 in general unsecured debt.

## 2.3    Significant Events During the Chapter 11 Case

The Debtor filed its voluntary petition on November 18, 2025 [Doc. No. 1].

The Debtor filed an *Emergency Motion for Use of Cash Collateral* [Doc. No. 4] on November 19, 2025, and filed an *Amended Emergency Motion for Use of Cash Collateral* [Doc. No. 6] on November 20, 2025.  An interim hearing was held on this motion on November 24, 2025, and an interim order granting this motion was entered on November 24, 2025 [Doc. No. 13]. A final order granting this motion was entered on January 13, 2026 [Doc. No. 43].

On November 19, 2025, the Debtor filed an *Emergency Motion for Entry of an Order Authorizing the Debtor to: (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses; (II) Continue Employee Benefits Programs; and (III) Granting Related Relief* [Doc. No. 5].  A hearing was held on that Motion on November 24, 2025, and a final order granting this motion was entered on November 24, 2025 [Doc. No. 14].

On December 10, 2025, the Debtor filed an *Application to Employ Kean Miller LLP as Counsel for Debtor-In-Possession* [Doc. No. 22].  An order granting this application was entered on January 3, 2026 [Doc. No. 36].

On December 2, 2025, the Debtor filed its *Schedules* [Doc. No. 21] and *Statement of Financial Affairs* [Doc. No. 20].  On December 18, 2025, Debtor filed its *Amended Schedule E/F* [Doc. No. 24], *Amended Schedule H* [Doc. No. 25], *Amended Summary of Schedules* [Doc. 26], and *Amended Statement of Financial Affairs* [Doc. No. 28].  On January 13, 2026, Debtor filed *Amended Schedules A/B*, *Amended Schedule G*, and an *Amended Summary of Assets and Liabilities* [Doc. No. 42].

On December 23, 2025, Debtor filed its Monthly Operating Report for the period running from November 18, 2025, through November 30, 2025 [Doc. No. 32].  On February 6, 2026, Debtor filed its Monthly Operating Report for the period running from December 1, 2025 through December 31, 2025 [Doc. No. 49].

The Meeting of Creditors was held on January 13, 2026.

On January 27, 2026, Gulf Coast filed a Proof of Claim [Claim No. 7] ("Gulf Coast's Proof of Claim") in the amount of $669,512.97.  Gulf Coast's Proof of Claim asserts, among other things, that the secured portion of its claims is $103,462.  The Debtor disputes the amount of the Secured

4

Claim asserted by Gulf Coast and intends to file an objection to the amount of such Secured Claim in connection with the confirmation of the Plan.  The Debtor reserves the right to assert any other objection it may have against Gulf Coast's Proof of Claim.

## 2.4     Liquidation Analysis

To confirm this Plan, the Court must find that all holders of Allowed Claims who do not accept this Plan will receive at least as much under the Plan as such holders would receive in a Chapter 7 liquidation. A Liquidation Analysis is attached hereto as **Exhibit A**.

The Liquidation Analysis reveals that in a hypothetical Chapter 7, Debtor's general unsecured creditors would not receive a distribution. This Plan proposes to pay holders of Allowed Unsecured Claims from the Reorganized Debtor's projected disposable income.  As set forth in the projected financial information attached hereto as **Exhibit B**, Debtor anticipates that there will be disposable income with which to make payments to general unsecured creditors.

Because the amount that creditors would receive in a Chapter 7 liquidation is less than what they will receive under this Plan, the best interest of creditors test set forth in Section 1129(a)(7) of the Bankruptcy Code is satisfied.

## 2.5     Feasibility/Projections

Debtors must show that they will have enough cash over the life of the Plan to make required Plan payments and operate the Reorganized Debtor's business. The Debtors have provided projected financial information on **Exhibit B.**  The financial projections are based on historical data, current performance, and management's experience.

Based on the projections, the Reorganized Debtor expects to have sufficient future income to satisfy its obligations under the Plan. Accordingly, this Plan satisfies the "feasibility" requirement under Section 1129(a)(11) of the Bankruptcy Code. Additionally, the Reorganized Debtor's disposable income, as that term is defined by Section 1191(d) of the Bankruptcy Code, over the period described in Section 1191(c)(2) of the Bankruptcy Code, will be committed to the payment of Allowed Claims, which renders the Plan "fair and equitable" to the Debtor's creditors.

## 2.6     Avoidable Transfers

The Debtors have not yet completed their investigation into prepetition transactions. The Debtors anticipate completing their investigation within 60 days after the Effective Date. If you received payment or other transfer of property that is fraudulent, preferential, or otherwise avoidable under the Bankruptcy Code, the Debtors may seek to avoid such transfer.

## III.     <u>SUMMARY OF PLAN</u>

This Chapter 11 Case was commenced under Subchapter V of the Bankruptcy Code. Subchapter V enables small business debtors, such as the Debtor, to more effectively reorganize in Chapter 11.

Under this Plan, the Reorganized Debtor intends to distribute cash generated from its operations to holders of Allowed Claims.

**All holders of Claims should refer to Articles IV and V of this Plan for information regarding the precise treatment of their claims.**

### IV.    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

Under Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and priority tax claims are not in classes. The administrative expense claimants and priority tax claimants are not entitled to vote on the Plan.

**4.1    Administrative Expense Claims**

**ALL CLAIMS FOR ADMINISTRATIVE EXPENSES MUST BE NOTICED FOR HEARING AND ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.**

The last day to file an application for allowance of an Administrative Expense Claim is the twenty-eighth (28th) calendar day after the Effective Date. Any application for allowance of an Administrative Claim that is not timely filed shall be deemed waived and barred as a Claim against the Debtors.

The Debtor anticipates Administrative Expense Claims from the following Claimants:

### 1.    Kean Miller, LLP; Counsel for the Debtors

The Debtor estimates that the estimated administrative expense claim of Kean Miller LLP will be $80,000.00.  As set forth in the projections attached as **Exhibit B, by agreement,** this claim will be paid out of the Reorganized Debtor's monthly disposable income until paid in full. For avoidance of doubt, this claim will be paid in full before the Allowed Unsecured Claims receive any distribution under the Plan.

Kean Miller is currently holding a prepetition retainer of $11,941.00 in trust.  Upon the Effective Date, Kean Miller is authorized to apply such retainer to its administrative expense claim to the extent such claim is allowed by the Court.  In the unlikely event, that the Court disallows Kean Miller's administrative expense claim in its entirety, Kean Miller will refund the retainer to the Reorganized Debtor.

### 2.    Thomas A. Howley; Subchapter V Trustee

Debtor has been paying Thomas A. Howley $1,000 per month since the case was filed. The Debtors estimates that the administrative expense claim of Thomas A. Howley will be $6,000.00.  To the extent that a balance remains on this claim upon the occurrence of the Effective

Date, that balance will be paid out of the Debtors' monthly disposable income until paid in full. For avoidance of doubt, this claim will be paid in full before Allowed Unsecured Claims receive any distribution under the Plan.

**4.2     Priority Claims**

Notwithstanding anything in this Plan or in the Confirmation Order to the contrary, the following provisions apply to all Priority Tax Claims under 4.2 of this Plan.  The Priority Tax Claims are classified as follows.  These classes are unimpaired.

Priority Tax Claims are also Secured Claims under 11 U.S.C. § 506 and are entitled to first priority as provided under applicable non-bankruptcy law. All ad valorem tax liens securing prepetition and postpetition taxes shall be retained until all such taxes are paid in full. The Reorganized Debtors shall keep current all postpetition ad valorem tax liabilities (2026 and subsequent years) in the ordinary course, prior to delinquency, with any default subject to applicable nonbankruptcy law, including immediate collection actions in state court, without further notice of order from the Bankruptcy Court. No administrative expense claim or a request for payment is required for payment of any postpetition taxes.

**Class 2-1: Harris County ESD #07**

Claimed Amount: $166.05.

This claim is for ad valorem taxes.  This claim will be paid in full on the Effective Date.

**Class 2-2: Harris County ESD #11**

Claimed Amount: $63.23.

This claim is for ad valorem taxes.  This claim will be paid in full on the Effective Date.

**Class 2-3: Lone Star College System**

Claimed Amount: $176.01.

This claim is for ad valorem taxes.  This claim will be paid in full on the Effective Date.

**Class 2-4: Klein Independent School District**

Claimed Amount: $1,680.21.

This claim is for ad valorem taxes.  This claim will be paid in full on the Effective Date.

### Class 2-5: Bridgestone Municipal Utility District

Claimed Amount: $813.62.

This claim is for ad valorem taxes. This claim will be paid in full on the Effective Date.

### Class 2-4: Texas Comptroler of Public Accounts

Claimed Amount: $295,374.00.

This claim is for back sales taxes. Pursuant to 11 U.S.C. § 1129(a)(9)(c), this claim will be paid over the course of 60 months at 8.5% annual interest beginning on the Effective Date. The monthly payment shall be $6,060.05.

## V. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan places claims and equity interests in various classes and describes the treatment of each class as set forth below. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. A claim or equity interest is impaired if the Plan alters the legal, equitable or contractual rights to which the claimants or equity holders are otherwise entitled. If the Plan is confirmed, each creditor's and equity holder's recovery is limited to the amount provided in the Plan.

Only creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of equity interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed equity interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

The claims and equity interests shall be treated as follows under the Plan:

### 5.1 Secured Claims:

### Class 3-1: Gulf Coast Bank

Scheduled Claimed Amount: $566,354.72.

This claim is secured by a UCC-1 claiming an interest in effectively all of Debtor's personal property. However, the amount of this claim exceeds the value of the collateral securing the claim. Therefore, this claim will be bifurcated with $73,697.34 being treated as secured, and the remaining $492,657.38 will be treated as unsecured.

The secured portion will be paid in full at 8% annual interest. Debtor shall make equal monthly payments from its disposable income beginning on the Effective Date and continuing until paid in full. The monthly payment on this claim would be $1,494.32.

8

The unsecured portion will be treated as a Class 4 claim.

This class is impaired.

### Class 3-2: Gulf Coast Bank

Claimed Amount: $101,998.40.

This claim is secured by a UCC-1 claiming an interest in effectively all of Debtor's personal property. However, the value of the collateral securing this claim is $0.00 as the claim in Class 1-1 is superior in priority and exceeds the value of the collateral. Therefore, this claim will be treated as wholly unsecured.

The unsecured portion will be treated as a Class 4 claim.

This class is impaired.

**5.2     Unsecured Claims – Class 4**

### Class 4: General Unsecured Claims

Amount: $681,612.23[1]

Pro Rata distribution from the Debtor's disposable income paid following payment of all allowed administrative expense and priority claims. This class will be paid over 60 months with payments beginning in the month following the month when the administrative expenses claims are paid in full and the Reorganized Debtor's cash reserves reach $50,000.

Once the Reorganized Debtor's cash reserves reach $50,000 and all administrative expense claims have been paid in full, the Reorganized Debtor will pay a minimum of 85% of its net operating cash flow for that month to the claims in this class. The remaining net operating cash flow (>15%) will be added to the Reorganized Debtor's cash reserve.

Exhibit B shows the Reorganized Debtor making monthly payments of $5,000.00 beginning in the twenty-eighth month, the payments would then increase to $5,500 in the thirty-seventh month, and again to $6,000 in the forty-night month. This results in total payments of $183,000.00 to the claims in this class. This is one hypothetical scenario. Exhibit B in no way obligates the Reorganized Debtor to begin making payments at that time or in that amount. The Reorganized Debtor may begin payments at a different date and in a different amount provided that it begins making payments as outlined above. When monthly payments begin, how much those payments are, and the total received by the creditors in Class 4 will depend on the actual revenues generated by the Reorganized Debtor during the 60-month period. The total paid to

---

[1] This amount includes $86,956.45 in general unsecured claims, $492,657.38 for the bifurcated claim in class 3-1, and $86,956.45 for the bifurcated claim in class 3-2.

9

creditors in this Class may be more or less than the amount on Exhibit B.

This class is impaired.

### 5.3    Equity Interest – Class 7

#### Class 5: Equity Holders

The interests of Equity Holders of the Debtor will retain their interests in the Reorganized Debtor.

This class in unimpaired.

### 5.4    Voting Procedures

Classes 3-1, 3-2, and 4 are impaired as defined by Section 1124 of the Bankruptcy Code. The Debtor is seeking the acceptance of the Plan by Claimants in such Classes. Each holder of an Allowed Claim in these classes may vote on the Plan by completing, dating, and signing the ballot sent to such holder, and returning it to the Debtor's counsel as set forth below:

- Ballots must be returned to Lloyd A. Lim, Kean Miller LLP, 711 Louisiana St., Suite 1800, Houston, Texas 7002, or via email at Lloyd.Lim@Keanmiller.com. In order to be counted, ballots must be RECEIVED no later than the time and on the date stated on the ballot.

## VI.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

### 6.1    Delay of Distribution on Disputed Claim/Escrow

No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final order of the Court. Any amounts to be distributed on the account of a Disputed Claim shall be placed in escrow pending allowance or disallowance by the Court.

### 6.2    Settlement of Disputed Claims

The Debtor will have the power and authority to settle and compromise a Disputed Claim with Court approval and in compliance with Rule 9019 of the Bankruptcy Rules.

### 6.3    Treatment Once Allowed

If a Disputed Claim is Allowed in accordance with this Plan, it shall receive treatment in accordance with the classes set forth in Article V above. In the event that a Disputed Claim or portion of a Disputed Claim is not Allowed, the escrowed funds allocated to that Disputed Claim or portion of the Disputed Claim that is disallowed shall be distributed *pro rata* among Allowed General Unsecured Claims.

## VII.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Debtor listed the following leases and/or executory contracts on its amended Schedule G [Doc. No. 42]:

Equipment Lease with Chemmark of East Texas, LP;
Franchise Agreement with Crust Bro, LLC;
Commercial Lease with FLC Enterprises, Inc[2]; and
Point of Sales System Contract with Toast, Inc.

Upon confirmation of this Plan, Debtor will assume each of these contracts.  To the extent that the Debtor is delinquent on any payments related to any of these contracts, the Debtor shall cure that delinquency within eighteen months of the Effective Date.

Unless specifically assumed in this Plan or in a previous order, all other leases and executory contracts to which the Debtor is a party are being rejected upon Confirmation.

## VIII.   MEANS FOR IMPLEMENTATION OF THIS PLAN

The Reorganized Debtor will continue to operate its business and is authorized to take any actions it deems necessary to operate same. The Plan will be funded from the Reorganized Debtor's disposable income earned from the Debtor's operations. To date, the Debtor has filed monthly operating reports for November 2025 through December 2025.

The Debtors base their projected disposable income (*see* **Exhibit B**) on historical data, current performance, and the management's experience. As shown on **Exhibit B**, the Reorganized Debtor's total anticipated revenue for the sixty-month period following the Effect Date will exceed its projected costs and expenses, generating a projected disposable income.  This disposable income will be used to fund the Plan.

The Reorganized Debtor shall serve as the disbursing agent under this Plan, whether the Plan is confirmed under Section 1191(a) (consensual confirmation) or Section 1191(b) (non-consensual confirmation) of the Bankruptcy Code. The Reorganized Debtor shall provide the Subchapter V Trustee and the US Trustee with quarterly reports of all distributions made pursuant to the Plan for the preceding three months, which reports shall indicate the date, amount, and payee for each distribution. The first report shall be due three months after the Effective Date.

To the extent that the Subchapter V Trustee incurs any fees and expenses post-confirmation for review of the distribution reports, he shall file a Notice of Fees and Expenses Incurred with 14-day notice to parties in interest. If there is no objection, the Reorganized Debtor shall remit payment to the Subchapter V Trustee. To the extent there is an objection, the

---

[2] On January 27, 2026, FLC Enterprise, Inc. filed Proof of Claim No. 6 asserting a secured claim of $34,957.42. Debtor intends to file an objection to the secured status of this claim on the basis that the security interest was unperfected as of the Petition Date and, to the extent it may have been perfected, FLC Enterprise's claim would be wholly unsecured because its lien is junior to the lien of Gulf Coast Bank.  Debtor reserves its right to object to Proof of Claim No. 6 for any other grounds that may be appropriate.

11

Reorganized Debtor shall remit payment to the Subchapter V Trustee in whatever amount is ultimately approved by the Court.

## IX.    EFFECT OF CONFIRMATION AND RELEASES

**9.1    Releases**

All consideration provided pursuant to this Plan shall be in exchange for and in complete satisfaction and release of all Claims, of any nature whatsoever, against the Debtor and Reorganized Debtor and/or any property of the Debtor, the Reorganized Debtor, or the bankruptcy estate. Notwithstanding the foregoing, the Reorganized Debtor's obligations specifically provided for under this Plan shall not be released and will survive Confirmation. Upon Confirmation, all property of the Debtor and the Reorganized Debtor, whether tangible or intangible, will be free and clear of all Claims, liens, charges, and any other encumbrances, except as provided in the Plan. The provisions of the Plan shall bind all Creditors of the Debtor, even if particular Creditors do not vote to accept this Plan. The rights and obligations of any entity affected under this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

Nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

## X.    DISCHARGE

If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, upon Confirmation, the Debtor will be discharged from any debt that arose before Confirmation, subject to the occurrence of the Effective Date, to the extent specified in Section 1141(d) of the Bankruptcy Code.

If the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, as soon as practicable after completion by the Reorganized Debtor of all payments due under the Plan, the Court shall grant the Debtors and/or the Reorganized Debtor a discharge of all debts provided in Section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under Section 502 of the Bankruptcy Code and provided for in this Plan, except for as otherwise provided in Section 1192 of the Bankruptcy Code.

12

## XI.   RESERVATION OF RIGHTS

Prior to the Effective Date, no provision of this Plan, nor any statement or provision contained herein, nor the taking of any action with respect to the Plan by the Debtor shall: (i) be deemed to be an admission against interest; and (ii) or be deemed to be a waiver of any rights which the Debtor might have against a Creditor. If the Effective Date does not occur, neither the Plan nor any statement contained therein may be used or relied upon in any matter in any suit, action, proceeding or controversy within or outside of this bankruptcy case.

**All claims and causes of action that are not specifically released under this Plan, including, but not limited to, claims for the avoidance and recovery of pre-petition transfers under Chapter 5 of the Bankruptcy Code, are hereby reserved to be prosecuted by the Reorganized Debtor post-Confirmation.**

## XII.   DEFAULT

This Article shall only apply if this Plan is confirmed pursuant to Section 1191(b) of the Bankruptcy Code. Under Section 1191(c)(3)(B) of the Bankruptcy Code, if the plan is confirmed on a non-consensual basis, the Debtor is required to "provide appropriate remedies" to protect the holders of claims or interests in the event that payments are not made.

If there is any default under the Plan, a Creditor whose Allowed Claim is treated under the Plan may file a notice of default. If the default is not cured within 30 days of a notice of default being filed with the Court, the Creditor may seek to enforce any rights available to it under the Plan and under applicable law.

## XIII.   GENERAL PROVISIONS

### 13.1   Retention of Jurisdiction by the Court

The Court shall retain jurisdiction of this Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan, including adjudicating any adversary proceedings or contested matters related to defaults under the Plan; (ii) to rule on any modification of the Plan proposed under Section 1193 of the Bankruptcy Code; (iii) to hear and allow all applications for  compensation to professionals and other Administrative Claims; (iv) to resolve all issues regarding Claims objections, and any issues arising from the assumption/rejection of executory contracts or unexpired leases; and (v) to adjudicate any cause of action which the Debtors may own, including preference and fraudulent transfer causes of action.

### 13.2   Claims Bar Date

Claims which are not actually filed by the Claims Bar Date will be forever barred and/or released from assertion against the Debtor, the Reorganized Debtor, or property of their bankruptcy estate, unless the Claim is listed on the Debtor's Schedules and is not listed as disputed, contingent, or unliquidated as to amount and as to which no objection has been filed.

13

### 13.3    Corporate Governance

The Reorganized Debtor shall continue to be governed in accordance with their pre-petition organizational documents.

### 13.4    Distributions

If any distribution is returned undeliverable or remains unclaimed after thirty days of the distribution date, no further distributions to the applicable holder shall be made unless and until the Reorganized Debtor, as distribution agent, is notified in writing of such holder's then-current address, and after the distribution agent makes a reasonable attempt to contact the claim holder. Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Any funds that are returned to the distribution agent or not timely presented for payment within thirty days of the issue date, shall be used by the distribution agent to make additional distributions pursuant to the terms of the Plan.

### 13.5    Subchapter V Trustee's Services

If this Plan is confirmed on a consensual basis, the Subchapter V Trustee's services will be terminated when this Plan is substantially consummated, and Section 1194 of the Bankruptcy Code does not contemplate the Subchapter V Trustee will make the Plan distributions.

However, as provided hereinabove, even if this Plan is confirmed under Section 1191(b) of the Bankruptcy Code, the Reorganized Debtor, not the Subchapter V Trustee, will be responsible for making distributions under this Plan.

### 13.6    Consensual Confirmation

If all applicable requirements of Section 1129(a) of the Bankruptcy Code are met except for the projected disposable income rule of Section 1129(a)(15) – which applies to individual debtors – Section 1191(a) of the Bankruptcy Code requires the Court to confirm this Plan.

### 13.7    Non-consensual Confirmation

Under Section 1191(b) of the Bankruptcy Code, confirmation is permitted even if the requirements of Sections 1129(8), (10) and (15) of the Bankruptcy Code are not met. Thus, cramdown does not require that: (i) all impaired classes accept the Plan; or (ii) at least one impaired class accepts the Plan. Instead, Section 1191(b)'s cramdown rules permit confirmation even if all impaired classes do not accept the plan. Therefore, if all other confirmation standards are met, the Court must confirm the Plan, on the request of the Debtor, if, with respect to each impaired class that has not accepted it, the Plan: (i) does not discriminate unfairly; and (ii) is fair and equitable.

14

**13.8    Post-Confirmation Automatic Stay**

If the Debtor's Plan is consensually confirmed under Section 1191(a) of the Bankruptcy Code, the bankruptcy automatic stay terminates upon the occurrence of the Effective Date. If the Debtor's Plan is non-consensually confirmed under Section 1191(b) of the Bankruptcy Code, the automatic stay will remain in place until such time as the case is closed.

**13.9    Effective Date, Substantial Consummation and Final Decree**

The Debtor shall file with the Court a Notice of Occurrence of the Effective Date on the Effective Date, or as soon as practicable thereafter.

Once the Debtor's bankruptcy estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor shall file a notice of substantial consummation with the Court along with a motion to obtain a final decree to close the Case. Alternatively, the Court may enter such a final decree on its own motion.

**13.10   Applicable Law**

Unless a rule of law or procedure is supplied by Federal law, including the Bankruptcy Code or the Bankruptcy Rules, the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**13.11   Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**13.12   Successors & Assigns**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on and shall inure to the benefit or detriment of any heir, executor, successor or assign, officer, manager, director, agent, representative, beneficiary, or guardian, if any, of each entity.

[*Continued to Next Page.*]

15

## XIV.   NOTICES

Notices to the Debtors and Reorganized Debtor may be sent by United States first class mail to:

JRCP Restaurants, LLC
5211 FM 2920 Ste. 108
Spring, TX 77386


With a copy by e-mail to:

Kean Miller LLP
c/o Lloyd A. Lim
711 Louisiana Street
Suite 1800
Houston, Texas 77002
Lloyd.Lim@KeanMiller.com


By: */s/* Justin R. Bentley
Name: Justin R. Bentley
Dated: February 17, 2026


SUBMITTED BY:

KEAN MILLER LLP

By: */s/ Lloyd A. Lim*
Lloyd A. Lim
Texas State Bar No. 24056871
Lloyd.Lim@keanmiller.com
711 Louisiana Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 844-3000
Telecopier: (713) 844-3030

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on February 17, 2026, a copy of the foregoing document was served to all parties entitled to receive notices through the Court's electronic notification system as permitted by Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas.

By:     */s/ Lloyd A. Lim*
        Lloyd A. Lim

EXHIBIT A

**JRCP Restaurants, LLC d/b/a Crust Pizza Gosling Pines**
**Liquidation Analysis**

| Business Valuation | Estimated Historic Cost |
|---|---|
| Cash | $25,825.34 |
| Accounts Receivable | $2,472.00 |
| Inventory | $100 |
| Office Furniture, Fixtures, Equipment | $44,300.00 |
| Intangibles and Intellectural Property | $1,000.00 |
| Total | $73,697.34 |

| Adminstrative Expenses | Cost |
|---|---|
| Chapter 7 Cost | $0.00 |
| Chapter 7 Trustee Fee | $0.00 |
| Chapter 11 Admin Claims | |
| Total | $0.00 |

| Secured Claims | Amount |
|---|---|
| Bank Loan (Gulf Coast Bank) | $668,353.12 |
| Total | $668,353.12 |

| Unsecured Claims | Amount |
|---|---|
| Priority Tax Claims | $405.29 |
| Utilities | Unknown |
| Credit Card Debt | $57,047.52 |
| Unpaid Rent | $21,120.00 |
| Total | $78,572.81 |

| Financial Analysis | |
|---|---|
| Business Valuation | $73,697.34 |
| Administrative Expenses | $0.00 |
| Secured Claims | $668,353.12 |
| Amount for Unsecured Creditors | ($611,320.65) |

EXHIBIT B

| EXHIBIT A |
| --- |
| JRCP Restaurants |
| Pro forma |

**Cash Reserve Forecast**

| Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Start Balance (from previous month) | $ 25,000.00 | $ 24,967.10 | $ 25,832.32 | $ 26,697.54 | $ 27,562.76 | $ 28,427.99 | $ 29,293.21 | $ 30,158.43 | $ 31,023.65 | $ 31,888.87 | $ 32,754.09 | $ 33,619.31 | $ 34,484.53 | $ 35,808.19 | $ 37,131.84 |
| End Balance ^ | $ (32.90) | $ 25,832.32 | $ 26,697.54 | $ 27,562.76 | $ 28,427.99 | $ 29,293.21 | $ 30,158.43 | $ 31,023.65 | $ 31,888.87 | $ 32,754.09 | $ 33,619.31 | $ 34,484.53 | $ 35,808.19 | $ 37,131.84 | $ 38,455.50 |

**Revenue**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 |
| Other Cash Flow | | | | | | | | | | | | | | | |
| **Total Revenue** | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 |

**Expenses**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Admin | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,030.00 | $1,050.60 | $1,050.60 | $1,050.60 |
| Payroll | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $26,700.00 | $27,234.00 | $27,234.00 | $27,234.00 |
| Vendors | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,300.00 | $19,686.00 | $19,686.00 | $19,686.00 |
| Phone Bill | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $490.00 | $499.80 | $499.80 | $499.80 |
| Rent | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 |
| Insurance | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,020.00 | $1,020.00 | $1,020.00 |
| Utilities | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,800.00 | $1,836.00 | $1,836.00 | $1,836.00 |
| Internet | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $575.00 | $586.50 | $586.50 | $586.50 |
| Sales Tax | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,800.00 | $6,936.00 | $6,936.00 | $6,936.00 |
| Franchise Fee | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,800.00 | $2,856.00 | $2,856.00 | $2,856.00 |
| **Total Expenses** | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $71,055.00 | $72,264.90 | $72,264.90 | $ 72,264.90 |

**Bankruptcy Payments**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Administrative Expenses* | $  - | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 |
| FLC Enterprises Inc. ($34,957.42) | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 |
| Gulf Coast Bank ($73,697.34 @ 8%) | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 |
| Harris County ESD #7 ($166.05) | $ 166.05 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - |
| Harris County ESD #11 ($63.23) | $ 62.23 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - |
| Lone Star College System ($176.01) | $ 176.01 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - |
| Klein ISD ($1,680.21) | $ 1,680.21 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - |
| Bridgestone Municipal Utility District ($813.62) | $ 813.62 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - |
| TX Comptroller($295,374.00 @ 8.5%) | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 |
| General Unsecured ($681,612.23) | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - |
| **Total Bankruptcy Payments** | $ 12,394.57 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Revenue (Line 13)** | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 83,416.67 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 |
| **Expenses** | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 71,055.00 | $ 72,264.90 | $ 72,264.90 | $ 72,264.90 |
| **Bankruptcy Payments** | $ 12,394.57 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 | $ 11,496.45 |
| **Net Operating Cash Flow** | $ (32.90) | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 865.22 | $ 1,323.65 | $ 1,323.65 | $ 1,323.65 |

*Includes Attorney Fees, Subchapter V
Trustee fees, and misc. administrative fees.

---

**EXHIBIT A**
**JRCP Restaurants**
**Pro forma**

**Cash Reserve Forecast**

| Month | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Start Balance (from previous month) | $ 38,455.50 | $ 39,779.15 | $ 41,102.81 | $ 42,426.46 | $ 43,692.19 | $ 44,957.93 | $ 46,223.66 | $ 47,489.39 | $ 48,755.13 | $ 50,020.86 | $ 51,754.20 | $ 53,487.53 | $ 55,220.87 | $ 55,954.20 | $ 56,687.54 |
| End Balance ^ | $ 39,779.15 | $ 41,102.81 | $ 42,426.46 | $ 43,692.19 | $ 44,957.93 | $ 46,223.66 | $ 47,489.39 | $ 48,755.13 | $ 50,020.86 | $ 51,754.20 | $ 53,487.53 | $ 55,220.87 | $ 55,954.20 | $ 56,687.54 | $ 57,420.87 |

**Revenue**

| | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 | $ 85,085.00 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 |
| Other Cash Flow | | | | | | | | | | | | | | | |
| **Total Revenue** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** |

**Expenses**

| | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Admin | $1,050.60 | $1,050.60 | $1,050.60 | $1,050.60 | $1,050.60 | $1,050.60 | $1,050.60 | $1,050.60 | $1,050.60 | $1,071.61 | $1,071.61 | $1,071.61 | $1,071.61 | $1,071.61 | $1,071.61 |
| Payroll | $27,234.00 | $27,234.00 | $27,234.00 | $27,234.00 | $27,234.00 | $27,234.00 | $27,234.00 | $27,234.00 | $27,234.00 | $27,778.68 | $27,778.68 | $27,778.68 | $27,778.68 | $27,778.68 | $27,778.68 |
| Vendors | $19,686.00 | $19,686.00 | $19,686.00 | $19,686.00 | $19,686.00 | $19,686.00 | $19,686.00 | $19,686.00 | $19,686.00 | $20,079.72 | $20,079.72 | $20,079.72 | $20,079.72 | $20,079.72 | $20,079.72 |
| Phone Bill | $499.80 | $499.80 | $499.80 | $499.80 | $499.80 | $499.80 | $499.80 | $499.80 | $499.80 | $509.80 | $509.80 | $509.80 | $509.80 | $509.80 | $509.80 |
| Rent | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 |
| Insurance | $1,020.00 | $1,020.00 | $1,020.00 | $1,020.00 | $1,020.00 | $1,020.00 | $1,020.00 | $1,020.00 | $1,020.00 | $1,040.40 | $1,040.40 | $1,040.40 | $1,040.40 | $1,040.40 | $1,040.40 |
| Utilities | $1,836.00 | $1,836.00 | $1,836.00 | $1,836.00 | $1,836.00 | $1,836.00 | $1,836.00 | $1,836.00 | $1,836.00 | $1,872.72 | $1,872.72 | $1,872.72 | $1,872.72 | $1,872.72 | $1,872.72 |
| Internet | $586.50 | $586.50 | $586.50 | $586.50 | $586.50 | $586.50 | $586.50 | $586.50 | $586.50 | $598.23 | $598.23 | $598.23 | $598.23 | $598.23 | $598.23 |
| Sales Tax | $6,936.00 | $6,936.00 | $6,936.00 | $6,936.00 | $6,936.00 | $6,936.00 | $6,936.00 | $6,936.00 | $6,936.00 | $7,074.72 | $7,074.72 | $7,074.72 | $7,074.72 | $7,074.72 | $7,074.72 |
| Franchise Fee | $2,856.00 | $2,856.00 | $2,856.00 | $2,856.00 | $2,856.00 | $2,856.00 | $2,856.00 | $2,856.00 | $2,856.00 | $2,913.12 | $2,913.12 | $2,913.12 | $2,913.12 | $2,913.12 | $2,913.12 |
| **Total Expenses** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** |

**Bankruptcy Payments**

| | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Administrative Expenses* | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ - | $ - | $ - |
| FLC Enterprises Inc. ($34,957.42) | $ 1,942.08 | $ 1,942.08 | $ 1,942.08 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gulf Coast Bank ($73,697.34 @ 8%) | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 |
| Harris County ESD #7 ($166.05) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Harris County ESD #11 ($63.23) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lone Star College System ($176.01) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Klein ISD ($1,680.21) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Bridgestone Municipal Utility District ($813.62) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| TX Comptroller($295,374.00 @ 8.5%) | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 |
| General Unsecured ($681,612.23) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 |
| **Total Bankruptcy Payments** | **$ 11,496.45** | **$ 11,496.45** | **$ 11,496.45** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 12,554.37** | **$ 12,554.37** | **$ 12,554.37** |

| | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Revenue (Line 13)** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 85,085.00** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** | **$ 86,786.70** |
| **Expenses** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 72,264.90** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** | **$ 73,499.00** |
| **Bankruptcy Payments** | **$ 11,496.45** | **$ 11,496.45** | **$ 11,496.45** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 11,554.37** | **$ 12,554.37** | **$ 12,554.37** | **$ 12,554.37** |
| **Net Operating Cash Flow** | **$ 1,323.65** | **$ 1,323.65** | **$ 1,323.65** | **$ 1,265.73** | **$ 1,265.73** | **$ 1,265.73** | **$ 1,265.73** | **$ 1,265.73** | **$ 1,265.73** | **$ 1,733.34** | **$ 1,733.34** | **$ 1,733.34** | **$ 733.34** | **$ 733.34** | **$ 733.34** |

*Includes Attorney Fees, Subchapter V
Trustee fees, and misc. administrative fees.

**EXHIBIT A**
**JRCP Restaurants**
**Pro forma**

**Cash Reserve Forecast**

| Month | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Start Balance (from previous month) | $ 57,420.87 | $ 58,154.21 | $ 58,887.54 | $ 59,620.88 | $ 60,354.22 | $ 61,087.55 | $ 61,820.89 | $ 62,531.18 | $ 63,241.47 | $ 63,951.76 | $ 64,662.04 | $ 65,372.33 | $ 66,082.62 | $ 66,792.91 | $ 67,503.20 |
| End Balance ^ | $ 58,154.21 | $ 58,887.54 | $ 59,620.88 | $ 60,354.22 | $ 61,087.55 | $ 61,820.89 | $ 62,531.18 | $ 63,241.47 | $ 63,951.76 | $ 64,662.04 | $ 65,372.33 | $ 66,082.62 | $ 66,792.91 | $ 67,503.20 | $ 68,213.49 |

**Revenue**

| | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 |
| Other Cash Flow | | | | | | | | | | | | | | | |
| **Total Revenue** | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 |

**Expenses**

| | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Admin | $1,071.61 | $1,071.61 | $1,071.61 | $1,071.61 | $1,071.61 | $1,071.61 | $1,093.04 | $1,093.04 | $1,093.04 | $1,093.04 | $1,093.04 | $1,093.04 | $1,093.04 | $1,093.04 | $1,093.04 |
| Payroll | $27,778.68 | $27,778.68 | $27,778.68 | $27,778.68 | $27,778.68 | $27,778.68 | $28,334.25 | $28,334.25 | $28,334.25 | $28,334.25 | $28,334.25 | $28,334.25 | $28,334.25 | $28,334.25 | $28,334.25 |
| Vendors | $20,079.72 | $20,079.72 | $20,079.72 | $20,079.72 | $20,079.72 | $20,079.72 | $20,481.31 | $20,481.31 | $20,481.31 | $20,481.31 | $20,481.31 | $20,481.31 | $20,481.31 | $20,481.31 | $20,481.31 |
| Phone Bill | $509.80 | $509.80 | $509.80 | $509.80 | $509.80 | $509.80 | $519.99 | $519.99 | $519.99 | $519.99 | $519.99 | $519.99 | $519.99 | $519.99 | $519.99 |
| Rent | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 |
| Insurance | $1,040.40 | $1,040.40 | $1,040.40 | $1,040.40 | $1,040.40 | $1,040.40 | $1,061.21 | $1,061.21 | $1,061.21 | $1,061.21 | $1,061.21 | $1,061.21 | $1,061.21 | $1,061.21 | $1,061.21 |
| Utilities | $1,872.72 | $1,872.72 | $1,872.72 | $1,872.72 | $1,872.72 | $1,872.72 | $1,910.17 | $1,910.17 | $1,910.17 | $1,910.17 | $1,910.17 | $1,910.17 | $1,910.17 | $1,910.17 | $1,910.17 |
| Internet | $598.23 | $598.23 | $598.23 | $598.23 | $598.23 | $598.23 | $610.19 | $610.19 | $610.19 | $610.19 | $610.19 | $610.19 | $610.19 | $610.19 | $610.19 |
| Sales Tax | $7,074.72 | $7,074.72 | $7,074.72 | $7,074.72 | $7,074.72 | $7,074.72 | $7,216.21 | $7,216.21 | $7,216.21 | $7,216.21 | $7,216.21 | $7,216.21 | $7,216.21 | $7,216.21 | $7,216.21 |
| Franchise Fee | $2,913.12 | $2,913.12 | $2,913.12 | $2,913.12 | $2,913.12 | $2,913.12 | $2,971.38 | $2,971.38 | $2,971.38 | $2,971.38 | $2,971.38 | $2,971.38 | $2,971.38 | $2,971.38 | $2,971.38 |
| **Total Expenses** | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 |

**Bankruptcy Payments**

| | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Administrative Expenses* | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| FLC Enterprises Inc. ($34,957.42) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gulf Coast Bank ($73,697.34 @ 8%) | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 |
| Harris County ESD #7 ($166.05) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Harris County ESD #11 ($63.23) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lone Star College System ($176.01) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Klein ISD ($1,680.21) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Bridgestone Municipal Utility District ($813.62) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| TX Comptroller($295,374.00 @ 8.5%) | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 |
| General Unsecured ($681,612.23) | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 |
| **Total Bankruptcy Payments** | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 |

| | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Revenue (Line 13)** | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 86,786.70 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 |
| **Expenses** | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 73,499.00 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 | $ 74,757.78 |
| **Bankruptcy Payments** | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 12,554.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 | $ 13,054.37 |
| **Net Operating Cash Flow** | $ 733.34 | $ 733.34 | $ 733.34 | $ 733.34 | $ 733.34 | $ 733.34 | $ 710.29 | $ 710.29 | $ 710.29 | $ 710.29 | $ 710.29 | $ 710.29 | $ 710.29 | $ 710.29 | $ 710.29 |

*Includes Attorney Fees, Subchapter V
Trustee fees, and misc. administrative fees.

| EXHIBIT A |
|---|
| JRCP Restaurants |
| Pro forma |

**Cash Reserve Forecast**

| Month | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Start Balance (from previous month) | $ 68,213.49 | $ 68,923.78 | $ 69,634.07 | $ 70,344.36 | $ 71,041.14 | $ 71,737.93 | $ 72,434.71 | $ 73,131.49 | $ 73,828.28 | $ 74,525.06 | $ 75,221.84 | $ 75,918.62 | $ 76,615.41 | $ 77,312.19 | $ 78,008.97 |
| End Balance ^ | $ 68,923.78 | $ 69,634.07 | $ 70,344.36 | $ 71,041.14 | $ 71,737.93 | $ 72,434.71 | $ 73,131.49 | $ 73,828.28 | $ 74,525.06 | $ 75,221.84 | $ 75,918.62 | $ 76,615.41 | $ 77,312.19 | $ 78,008.97 | $ 78,705.75 |

**Revenue**

| | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 88,522.44 | $ 88,522.44 | $ 88,522.44 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 | $ 90,292.89 |
| Other Cash Flow | | | | | | | | | | | | | | | |
| **Total Revenue** | **$ 88,522.44** | **$ 88,522.44** | **$ 88,522.44** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** |

**Expenses**

| | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Admin | $1,093.04 | $1,093.04 | $1,093.04 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 | $1,114.91 |
| Payroll | $28,334.25 | $28,334.25 | $28,334.25 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 | $28,900.94 |
| Vendors | $20,481.31 | $20,481.31 | $20,481.31 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 | $20,890.94 |
| Phone Bill | $519.99 | $519.99 | $519.99 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 | $530.39 |
| Rent | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 | $10,560.00 |
| Insurance | $1,061.21 | $1,061.21 | $1,061.21 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 | $1,082.43 |
| Utilities | $1,910.17 | $1,910.17 | $1,910.17 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 | $1,948.38 |
| Internet | $610.19 | $610.19 | $610.19 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 | $622.40 |
| Sales Tax | $7,216.21 | $7,216.21 | $7,216.21 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 | $7,360.54 |
| Franchise Fee | $2,971.38 | $2,971.38 | $2,971.38 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 | $3,030.81 |
| **Total Expenses** | **$ 74,757.78** | **$ 74,757.78** | **$ 74,757.78** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** |

**Bankruptcy Payments**

| | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Administrative Expenses* | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| FLC Enterprises Inc. ($34,957.42) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Gulf Coast Bank ($73,697.34 @ 8%) | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 | $ 1,494.32 |
| Harris County ESD #7 ($166.05) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Harris County ESD #11 ($63.23) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lone Star College System ($176.01) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Klein ISD ($1,680.21) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Bridgestone Municipal Utility District ($813.62) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| TX Comptroller ($295,374.00 @ 8.5%) | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 | $ 6,060.05 |
| General Unsecured ($681,612.23) | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 |
| **Total Bankruptcy Payments** | **$ 13,054.37** | **$ 13,054.37** | **$ 13,054.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** |

| | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Revenue (Line 13)** | **$ 88,522.44** | **$ 88,522.44** | **$ 88,522.44** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** | **$ 90,292.89** |
| **Expenses** | **$ 74,757.78** | **$ 74,757.78** | **$ 74,757.78** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** | **$ 76,041.73** |
| **Bankruptcy Payments** | **$ 13,054.37** | **$ 13,054.37** | **$ 13,054.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** | **$ 13,554.37** |
| **Net Operating Cash Flow** | **$ 710.29** | **$ 710.29** | **$ 710.29** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** | **$ 696.78** |

*Includes Attorney Fees, Subchapter V
Trustee fees, and misc. administrative fees.